S13A1294. PHELPS v. THE STATE.
(750 SE2d 340)

HINES, Presiding Justice.

Willie C. Phelps appeals from the denial of his motions to withdraw his pleas of guilty to the felony murder of Christopher Sloan while in the commission of aggravated assault, and the aggravated assault of Leon Thomas. For the reasons that follow, we affirm.

On October 7, 2009, in a twelve-count indictment, a Brooks County grand jury indicted Phelps, along with Kenneth Dewayne Brinson and Kenneth Dewayne Williams, for felony murder, aggravated assault, and possession of a firearm during the commission of a felony; the alleged crimes involved the shooting death of Sloan, as well as aggravated assaults upon Sloan, Thomas, Antonio Edwards, Jermaine Hallman, and Sierra Dasher. As to each count of the indictment, each defendant was indicted individually and as a party to the crimes. At a hearing on May 10, 2010, Phelps intended to plead

---

guilty to felony murder and to the count of the indictment alleging the aggravated assault of Thomas. However, during the proceedings, it became apparent that the indictment's count regarding the aggravated assault was not properly worded. A separate accusation was prepared, addressing that crime alone, with a separate case number, and Phelps pled guilty to felony murder under Count 1 of the indictment, and guilty to the aggravated assault of Thomas under the separate accusation. The next day, on May 11, 2010, the trial court entered an order sentencing Phelps to life in prison for felony murder, and a separate order sentencing him to twenty years in prison for aggravated assault, to be served concurrently with the sentence for felony murder. An order of nolle prosequi was subsequently entered as to the remaining counts of the indictment.

On June 6, 2010, Phelps filed separate motions to withdraw his guilty pleas in the two cases. On May 12, 2011, the trial court conducted a single hearing to address both motions, and denied them in separate orders entered on September 1, 2011. On September 12, 2011, Phelps filed a notice of appeal in each case, and a consolidated appeal was docketed in this Court on May 13, 2013.

1. Phelps asserts that the acceptance of his guilty pleas was invalid because the trial court failed to ensure on the record that there was a factual basis for them. See Uniform Superior Court Rule (USCR) 33.9.[1]

> The purpose of USCR 33.9 is to protect against someone pleading guilty when that person may know what he has done but may not know that those acts do not constitute the crime with which he is charged. USCR 33.9 provides this protection by requiring a trial court to subjectively satisfy itself that there is a factual basis for the plea.

*State v. Evans*, 265 Ga. 332, 334 (2) (454 SE2d 468) (1995) (citations omitted.) USCR 33.9 "requires nothing more than that the trial court make itself aware of the factual basis of the plea. [Cit.]" Id.

During the plea hearing, the State recited that evidence in the case showed that: Phelps drove a van to an apartment complex accompanied by three other men; one of Phelps's companions had recently had an altercation with Thomas; the four men got out of the van and entered one of the apartments where Sloan, Thomas, and

---

[1] USCR 33.9 reads: "Notwithstanding the acceptance of a plea of guilty, the judgment should not be entered upon such plea without such inquiry on the record as may satisfy the judge that there is a factual basis for the plea."

other persons were gathered; Phelps and his companions exited the apartment; Phelps took a 12-gauge shotgun from the van, returned to the apartment, and fired the shotgun at Sloan and Thomas as they fled; Sloan was fatally shot in the back but Thomas was not hit; Phelps stood over Sloan's body holding the shotgun; and Phelps returned to the van and drove away. The court asked Phelps if this was "substantially correct," and Phelps said that the "shooting part" was "half" right. The court asked if he wished to explain and Phelps, after consultation with his attorney, said that

> Kenneth took the gun from me and shot that dude with the gun, then handed the gun back to me. Then we walked outside standing over the victim. [Sloan] told me he didn't jump on Kenneth. I told him I know he didn't. And . . . I told him Kenneth was the one that shot him.

The trial court asked if Phelps was "a party with [his companions] to the crime," and he said that he was. The court asked Phelps's attorney whether she believed that there was enough evidence against him to justify his pleading guilty, and she stated that the State had charged Phelps both individually and as a party to the crimes, that the evidence included Phelps's statements to law enforcement officers, and she thus concluded that the State would be able to prove him guilty beyond a reasonable doubt.

Our review of the plea hearing transcript demonstrates that the trial court amply determined that a factual basis existed for the pleas. See *Loyd v. State*, 288 Ga. 481, 485-486 (4) (b) (705 SE2d 616) (2011).[2]

2. Phelps contends the trial court erred in denying his motions to withdraw his guilty pleas because they were not knowingly and voluntarily entered.

> To determine whether a guilty plea is valid, the record must show that the defendant understands the plea and the constitutional rights that he is relinquishing. *Boykin v. Alabama*, 395 U. S. 238 (89 SCt 1709, 23 LE2d 274) (1969). The State has the burden on direct review of establishing that the plea was entered intelligently and voluntarily. *King v. State*, 270 Ga. 367 (1) (509 SE2d 32) (1998). The State may meet this burden "by showing on the record of the guilty plea

---

[2] Phelps contends that there could be no factual basis for the guilty plea to felony murder because, if he was considered a party to the crime, there was no conviction of the person who pulled the trigger of the weapon that killed Sloan, and thus no one with whom he could be a party. However, this contention is directly contrary to the law. See OCGA § 16-2-21.

hearing that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea, or by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary." (Citation and punctuation omitted.) *Loyd*[, supra at 485 (2) (b)]. After sentencing, the decision on a motion to withdraw a guilty plea is within the trial court's discretion and withdrawal of the plea is allowed only when necessary to correct a manifest injustice. *Walden v. State*, 291 Ga. 260 (1) (728 SE2d 186) (2012); Uniform Superior Court Rule (USCR) 33.12.

*Wright v. State*, 292 Ga. 825, 826 (1) (742 SE2d 468) (2013).

(a) Phelps contends that he was not adequately advised that he had the rights not to incriminate himself, to confront the witnesses against him, to subpoena witnesses in his defense, to testify in his own behalf, and that he would be presumed innocent. He specifically asserts that the information he was given about these rights was inadequate because, as to each, the trial court did not specify that the right applied "at trial." However, informing a defendant of his rights during a guilty plea proceeding does not require any particular language or "magic words." *Adams v. State*, 285 Ga. 744, 745 (1) (683 SE2d 586) (2009). Nonetheless, Phelps urges that this Court established in *Wilson v. Kemp*, 288 Ga. 779 (729 SE2d 90) (2011), a requirement that the trial court use the term "at trial" when discussing the waiver of each of these rights. But, *Wilson* did not impose such a requirement, and none would have been appropriate in that case; there the trial court "specifically limited its discussion of Wilson's 'right to remain silent' to the guilty plea hearing itself, without ever informing him that, by pleading guilty, he would waive that right at trial." Id. at 779-780. That is not the situation at bar. Rather, during the plea hearing, the trial court repeatedly spoke of Phelps's right to a jury trial; the court enumerated his rights in the context of such a trial, and stated: "if you wish to have a trial by a jury or exercise any of these rights, all you have to do is enter a plea of not guilty and a jury trial will be held for you in the case." The court further informed Phelps that if he pled guilty, "you'll be giving up all these rights [and] you'll be giving up the presumption of innocence." Thus, even though each sentence the court spoke to inform Phelps of his rights did not use the words "at trial," the court adequately advised Phelps of the rights he was forgoing by choosing not to go to trial.

Further, the record reveals that Phelps responded to questions on a questionnaire and then signed it. This questionnaire was entered into evidence during the plea hearing, and the court dis-

cussed it with Phelps. This document states that Phelps had conferred with his attorney and understood that: he did not have to plead guilty, but could plead not guilty; by pleading guilty, he was giving up the right to a trial by jury; if he went to trial, he would have the right to be represented by counsel, and that counsel would be appointed if he could not afford to hire an attorney; he would have the right to remain silent at any trial and not incriminate himself; if he went to trial, he would be able to confront his accusers and cross-examine them; and, if he went to trial, the State would have to prove him guilty beyond a reasonable doubt. Above Phelps's signature at the end of the document appeared the text: "I have read (or have had read to me) all of the above questions (and answers) and I understand them, and the answers shown above are true and correct and are the ones that are [sic] entered by me of my own free will." The document also contains a signed certificate of counsel, in which Phelps's attorney stated that she had advised him of the charges against him, as well as his statutory and constitutional rights, and that Phelps gave his answers to the document's questions in her presence.

Nonetheless, Phelps asserts that this document must be disregarded because the answer space for the first question on it — "[a]re you able to hear and understand these statements and questions?" — was left blank. However, this argument ignores the fact that the signature portion of the document clearly stated that Phelps understood the questions and that the answers he gave to them were true.[3] And, although Phelps contends that his responses on the document "alone" cannot demonstrate that his pleas were knowingly and voluntarily made, in doing so, he misunderstands the record; the State does not look only to the document to meet its burden of showing that Phelps's pleas were knowingly and voluntarily entered, and this Court need not determine whether that document, standing alone, establishes the validity of the pleas. Compare *King v. State*, 270 Ga. 367, 371 (1) (509 SE2d 32) (1998). Rather, the document is evidence which, in conjunction with the record of the plea hearing, meets the State's burden. See *Loyd*, supra. See also *Lewis v. State*, 293 Ga. 544 (1) (748 SE2d 414) (2013).

Phelps also contends that the trial court erred in verbally informing him during the plea hearing that counsel would "assist" him at any trial if he chose not to plead guilty, and that the court should have instead used the word "represent." Again, no specific "magic words"

---

[3] Counsel testified that Phelps asked pertinent questions about the questionnaire and she believed that he understood the rights addressed therein, both when it was initially filled out, and when she went over it with Phelps before the plea hearing.

are required to be used during a guilty plea proceeding to inform a defendant about his rights. *Adams*, supra.[4] Further, even if it were necessary that the word "represent" be used, regarding this right, on the document that Phelps signed appeared the text: "you have a right to be represented by counsel at any such trial, and that if you cannot afford to hire counsel, counsel will be appointed."[5]

(b) Phelps contends that he was not mentally competent to enter his pleas of guilty. At the time of the plea hearing, the trial court had the benefit of the report of a forensic psychologist who examined Phelps and concluded that, although Phelps had "mild mental retardation," he was nonetheless competent to stand trial in that he understood the nature of the proceedings and his relation to them, and was capable of rendering assistance to counsel. See *Stripling v. State*, 261 Ga. 1, 2 (3) (401 SE2d 500) (1991). See also *Morrow v. State*, 266 Ga. 3 (463 SE2d 472) (1995) ("[T]he standard of competency for pleading guilty is the same as the competency standard for standing trial.") Phelps has produced no evidence to support his contention that he was not competent, and the trial court did not err in denying the motion to withdraw his guilty pleas on this ground. *Wright*, supra.

(c) The State's sentencing recommendation was that Phelps be sentenced to life in prison for felony murder and twenty years in prison for aggravated assault, to run concurrently, which were the sentences the court imposed. At one point during the plea hearing, the trial court informed Phelps that felony murder carries a "possible penalty of up to life in prison. It carries a minimum of 30 years to serve before you're eligible for parole." Of course, a sentence of life in prison is the mandatory minimum sentence upon conviction of felony murder. OCGA § 16-5-1 (d). Phelps contends that he was thus misadvised of the penalty he potentially faced, and therefore did not understand the consequences of his guilty plea to the crime of felony murder. See *Johnson v. State*, 227 Ga. App. 390, 391 (1) (489 SE2d 138) (1997).

---

[4] Informing a defendant that he would be "represented" by counsel is not "magical wording" that must be used in advising a defendant of his rights. This can readily be seen by the requirement in USCR 33.8 (B) (6) that "[t]he judge should not accept a plea of guilty or nolo contendere from a defendant without first . . . [i]nforming the defendant on the record that by entering a plea of guilty or nolo contendere one waives . . . the right to *assistance* of counsel during trial." (Emphasis supplied.)

[5] Phelps also couches the above arguments as a failure to meet the requirements of USCR 33.8. As to such,

the salient inquiry is . . . whether the record, as a whole, affirmatively shows that the plea in question was knowing and voluntary. [Cit.] And, the record shows that the guilty plea substantially complied with the applicable uniform rules. [Cit.] Indeed, a defendant need not be expressly advised of each and every right set forth in USCR 33.8. [Cit.] Although in this case [Phelps] was so advised.

*Lewis*, supra at 547-548.

However, at another point during the plea hearing, the court stated that if Phelps pled guilty, the court would "impose a sentence upon you within the limits which I've already explained to you, which are life in prison for the felony murder, and up to 20 years for the aggravated assault. Do you understand that?" Phelps responded that he did.

Phelps also notes that on the document he signed, his trial counsel filled in "30 years" as the minimum sentence for felony murder, and "life" as the maximum sentence for that crime. Counsel testified that she spent considerable time discussing with Phelps the sentences he would receive, and his possibility of receiving parole, and that in doing so, she informed him that by pleading guilty, he would be sentenced to life in prison for felony murder, that such was the required sentence for that crime, but that he could be eligible for parole in a minimum of 30 years. Counsel testified that she put 30 years on the document as a minimum sentence to communicate that such was the minimum amount of time Phelps would spend in prison, and that she explained that the ultimate decision as to whether he would receive parole would be made by the State Board of Pardons and Paroles at the time of his eligibility. In light of counsel's testimony and in viewing the transcript of the plea hearing as a whole, as well as the questionnaire administered to Phelps before the hearing, we cannot conclude that the trial court abused its discretion in determining that Phelps understood the consequences of his pleas and that withdrawal of the guilty pleas was not necessary to correct a manifest injustice. *Wright,* supra. See also *Rodriguez v. State,* 280 Ga. App. 423, 424 (634 SE2d 182) (2006).[6]

3. Phelps also contends that his trial counsel failed to provide effective representation in connection with his guilty pleas, and that his motion to withdraw the pleas should thus have been granted. In order to prevail on his claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis,* 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington,* 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide

---

[6] Phelps also notes that during the hearing, the trial court referred to the available sentence for aggravated assault as "one to 20 years or a hundred thousand dollar fine," and contends that the trial court should have said "*and* a hundred thousand dollar fine"; no fine was imposed. Phelps advances this as a basis for withdrawal of his guilty pleas, and we conclude that the trial court did not err on this ground in determining that withdrawal of the guilty pleas was not necessary to correct a manifest injustice. *Wright,* supra.

range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong, he must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty but would have insisted on going to trial. *State v. Heath*, 277 Ga. 337, 338 (588 SE2d 738) (2003). " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Although Phelps contends that counsel failed to ensure that he was properly advised of, and understood, the rights he was forgoing by pleading guilty, see Division 2, supra, he was properly advised of his rights, and the trial court did not err in determining that he understood them. Nor did the trial court err in finding that Phelps had not shown a reasonable probability that he would have proceeded to trial if counsel had behaved as Phelps now contends that she should have. Phelps also contends that counsel was ineffective for allowing him to believe that he was pleading guilty as a party to the crimes, not as a "principal." But, he cites no legal consequences for this distinction. See OCGA §§ 16-2-20; 16-5-1; 16-5-21. And, during the plea hearing, he informed the trial court of his version of events, and the trial court accepted his pleas based on the theory that he was a party to the crimes. Thus, to the extent that Phelps's testimony during the hearing on his motions to withdraw his pleas can be read to indicate that he would have proceeded to trial had he understood his pleas differently, the trial court did not err in rejecting that testimony.

4. Finally, Phelps contends that his guilty plea to the accusation setting forth the aggravated assault of Thomas was invalid because his signed plea to that charge waived "formal arraignment, copy of accusation, list of witnesses, [and] jury trial," but it did not waive indictment, and thus did not meet the requirements of OCGA § 17-7-70 (a).[7]

> Normally, a defendant may be tried based on an accusation if the defendant has agreed in writing to a waiver of indict-

---

[7] OCGA § 17-7-70 reads:
(a) In all felony cases, other than cases involving capital felonies, in which defendants have been bound over to the superior court, are confined in jail or released on bond pending a commitment hearing, or are in jail having waived a

ment by a grand jury. However, if, as here, a defendant has entered a *guilty plea*, then "such plea would waive any defense known and unknown, and this would include any deficiency in the written waiver" requirement.

*Wilson v. State*, 302 Ga. App. 433, 435 (2) (691 SE2d 308) (2010) (Citations omitted; emphasis supplied.) See also *Balkcom v. Mc-Daniel*, 234 Ga. 470 (216 SE2d 328) (1975). The fact that the aggravated assault upon Thomas was factually connected to the felony murder of Sloan does not mean that OCGA § 17-7-70 (a) required that the State prosecute Phelps only on the indictment charging him with felony murder. See *Mayo v. State*, 277 Ga. 645, 646 (2) (594 SE2d 333) (2004).

> *Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 21, 2013.

*John G. Edwards*, for appellant.
*J. David Miller*, District Attorney, *Jessica W. Clark*, Assistant District Attorney, *Samuel S. Olens*, Attorney General, *Patricia B. Attaway Burton*, Deputy Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, for appellee.

commitment hearing, the district attorney shall have authority to prefer accusations, and such defendants shall be tried on such accusations, provided that defendants going to trial under such accusations shall, in writing, waive indictment by a grand jury.

(b) Judges of the superior court may open their courts at any time without the presence of either a grand jury or a trial jury to receive and act upon pleas of guilty in misdemeanor cases and in felony cases, except those punishable by death or life imprisonment, when the judge and the defendant consent thereto. The judge may try the issues in such cases without a jury upon an accusation filed by the district attorney where the defendant has waived indictment and consented thereto in writing and counsel is present in court representing the defendant either by virtue of his employment or by appointment by the court.