350 Ga. 857
FINAL COPY

S19A0384.  BRADLEY v. THE STATE.

ELLINGTON, Justice.

In July 2014, Montravious Bradley entered a non-negotiated guilty plea to murder and other offenses in connection with the death of Jerrick Jackson during the armed robbery of Jackson and his fiancée, Kimberly Little.[1] After entry of judgment, Bradley filed

---

[1] The crimes occurred on May 7, 2013. Along with Geno Lewis, Felton Demetrius Lovejoy, Demetrius Morgan, and Alejandro Pitts, Bradley was indicted on October 29, 2013, by a Fulton County grand jury for participation in criminal street gang activity (Count 1), murder (Count 2), four counts of felony murder (Counts 3, 4, 5, and 6), two counts of armed robbery (Counts 8 and 9), aggravated assault (Count 10), two counts of false imprisonment (Counts 11 and 12), burglary (Count 13), and possession of a firearm during the commission of a felony (OCGA § 16-11-106) (Count 14). In connection with Bradley's guilty plea, entered on July 7, 2014, the State dismissed Count 14 by entry of nolle prosequi. The trial court sentenced Bradley to life imprisonment for murder (Count 2) and to fifteen years in prison for participation in criminal street gang activity (Count 1), twenty years for armed robbery of Little (Count 9), twenty years for aggravated assault of Jackson by shooting him (Count 10), and ten years for false imprisonment of Little (Count 11), all to be served concurrently with the life sentence. The sentencing order indicated that each count of felony murder (Counts 3, 4, 5, and 6) merged with the murder conviction, although the felony murder verdicts were actually vacated by operation of law. *Stewart v. State*, 299 Ga. 622, 627-628 (3) (791 SE2d 61) (2016). The sentencing order also incorrectly indicated that the armed robbery verdict involving Jackson (Count 8), the false imprisonment verdict involving

a timely motion to withdraw his guilty plea, contending that his guilty plea was not knowingly, intelligently, and voluntarily entered. The trial court denied the motion. Bradley appeals, contending that the trial court failed to advise him of the sentencing range for murder and felony murder, but advised him instead only of the maximum sentence authorized for those offenses, and that the trial court therefore improperly failed to advise him of the direct consequences of entering a guilty plea. For the reasons set forth below, we affirm, except that we vacate in part to correct a sentencing error.

---

Jackson (Count 12), and the burglary verdict (Count 13) merged with the murder conviction. We do not address these sentencing errors, as the State has not filed a cross-appeal. See *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017) ("[W]hen a merger error benefits a defendant and the State fails to raise it by cross-appeal, we henceforth will exercise our discretion to correct the error upon our own initiative only in exceptional circumstances."). The separate sentence for aggravated assault constitutes a sentencing error, in that the aggravated assault of Jackson (Count 10) merged with the murder conviction (Count 2) for sentencing purposes. See Division 3, infra. Bradley timely filed pro se a motion to withdraw his guilty plea on August 1, 2014, and amended his motion with counsel on April 18, 2017. After a hearing on the motion to withdraw the guilty plea on June 16, 2017, the trial court denied the motion on August 31, 2018. Bradley filed a timely notice of appeal, and this case was docketed in this Court for the term beginning in December 2018 and submitted for decision on the briefs.

1. The State presented the following factual basis for Bradley's guilty pleas. On May 7, 2013, Bradley and his co-defendants, all members of a gang known for armed robberies, were driving in the vicinity of Lowe Street in Fulton County when they spotted a Porsche Cayenne being parked in a residential driveway. Jerrick Jackson was driving the Cayenne, and his fiancée, Kimberly Little, was a passenger. Bradley and his co-defendants, armed with guns, approached Jackson and Little and forced them to the ground. They took Jackson's wallet and cell phone and took Little's purse and cell phone. The men asked who was in the house. They forced the victims inside and forced them to turn off the silent alarm. Bradley and a co-defendant held Jackson at gunpoint at close range, and asked again who was upstairs in the house, and he said "just my daughter." Some of the robbers started to go upstairs and, when Jackson tried to stop them, they shot him several times. He died shortly after being transported to the hospital.

2. Bradley contends that the trial court improperly failed to advise him on the record of the direct consequences of entering a

guilty plea to the offenses charged. Specifically, he argues that he was not advised on the record as to the "mandatory minimum" sentences for the crimes of murder and felony murder. Bradley contends that, rather than being advised during the guilty plea hearing "as to the proper sentencing ranges for the crimes of [m]urder and [f]elony [m]urder[,]" he was "only advised, in a deceptive manner, that the 'maximum' sentence for [m]urder and [f]elony [m]urder was [l]ife" imprisonment, which left him confused regarding the sentencing options available to the trial court.[2] Bradley argues that, as a result of this failure, his guilty plea was not knowingly, intelligently, and voluntarily entered, thereby causing manifest injustice and prejudice to him.

> After sentencing, a defendant may withdraw his guilty plea only to correct a manifest injustice, which exists if the plea was in fact entered involuntarily or without an understanding of the nature of the charges. See . . . Uniform Superior Court Rule 33.12 (B).[3] When a defendant challenges the validity of his

---

[2] See OCGA § 16-5-1 (e) (1) ("A person convicted of the offense of murder shall be punished by death, by imprisonment for life without parole, or by imprisonment for life.").

[3] "In the absence of a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw a plea of guilty or nolo

guilty plea in this way, the State bears the burden of showing that the defendant entered his plea knowingly, intelligently, and voluntarily. The State may meet its burden by showing on the record of the guilty plea hearing that the defendant understood the rights being waived and possible consequences of the plea or by pointing to extrinsic evidence affirmatively showing that the plea was voluntary and knowing. In evaluating whether a defendant's plea was valid, the trial court should consider all of the relevant circumstances surrounding the plea. The court's decision on a motion to withdraw a guilty plea will not be disturbed absent an obvious abuse of discretion.

*Johnson v. State*, 303 Ga. 704, 706-707 (2) (814 SE2d 688) (2018) (citations and punctuation omitted).

The Uniform Superior Court Rules require that, before a court accepts a guilty plea, the defendant be informed on the record, inter alia, "of the mandatory minimum sentence, if any, on the charge." USCR 33.8 (D) (4). The information that must be given to the defendant under USCR 33.8 "may be developed by questions from the judge, the prosecuting attorney or the defense attorney or a combination of any of these." USCR 33.8. If a defendant on direct review challenges the validity of his guilty plea based on an alleged

---

contendere as a matter of right once sentence has been pronounced by the judge." USCR 33.12 (B).

violation of the superior court rules prescribing the procedures for accepting a guilty plea, "the State has the burden of showing substantial compliance with USCR 33, along with the constitutional requirements that underlie portions of that rule." *Smith v. State*, 287 Ga. 391, 399 (3) (697 SE2d 177) (2010) (citation omitted). "As to any complaint by [an appellant] about the trial court's failure to follow the letter of the applicable Uniform Superior Court Rules, the salient inquiry is the same, that is, whether the record, as a whole, affirmatively shows that the plea in question was knowing and voluntary." *Lewis v. State*, 293 Ga. 544, 547 (1) (748 SE2d 414) (2013) (citation omitted). See also *Phelps v. State*, 293 Ga. 873, 878 n.5 (750 SE2d 340) (2013) (accord).

The record of the guilty plea hearing in this case shows the following. At the beginning of the hearing, after placing Bradley under oath, the trial court asked Bradley questions to establish his capacity to understand the proceedings. Then the prosecutor reviewed the possible consequences of Bradley's plea with Bradley, as follows:

PROSECUTOR: Do you understand that this is a non-negotiated plea and that your counsel will make a recommendation to the Court and the State would make a recommendation to the Court, but ultimately the Judge will make a final determination as to what your sentence will be; do you understand that?

BRADLEY: Yes, sir.

PROSECUTOR: Because it's a non-negotiated plea, you won't have an opportunity to withdraw your guilty plea; do you understand? . . .

BRADLEY: Yes, sir. . . .

PROSECUTOR: Do you understand that Count 1, participation in gang activity, carries a maximum sentence of 15 years in prison. Do you understand that?

BRADLEY: Yes, sir.

PROSECUTOR: Do you understand that Count 2, murder, and Counts 3, 4, 5 and 6, felony murder, they carry a maximum sentence of life in prison. Do you understand that?

BRADLEY: Yes, sir.

After the prosecutor recited the maximum sentences for the remaining counts, he reviewed the rights that Bradley would give up by pleading guilty. Later in the hearing, the prosecutor outlined what he expected the evidence to prove beyond a reasonable doubt and then stated that the State recommended a sentence of life imprisonment without the possibility of parole. The prosecutor explained that Jackson's father felt that Bradley's co-defendant who

was the driver should receive a more lenient sentence but felt that Bradley and his other co-defendants, "the shooters in the case and those who entered the home and ultimately caused the death of Jerrick Jackson," should "spend the rest of their li[ves] in jail as a result of this heinous crime against [Jackson], so for those reasons the State is recommending life without parole."

Defense counsel then requested sentencing as follows:

> It is our position Mr. Bradley is actually a good kid who for whatever reason fell in with the wrong crowd and on this particular date happened to be with the crowd when they made a decision that resulted in the death of Mr. Jackson. We are asking the Court to consider . . . giving him *a life sentence* and letting the other . . . charges run concurrent with that sentence. . . . [A]s has been indicated, this is a non-negotiated [plea] and we are asking for *the most lenient sentence that the Court can give.*

(Emphasis supplied.) The court asked at that point if Bradley had any questions that he wanted to ask the court, and Bradley said, "no, sir."

The court continued its colloquy, and Bradley affirmed that he had had a chance to fully discuss the facts and circumstances of his

case with his attorneys. The court asked how Bradley wished to plead to the 12 counts against him, and Bradley responded, "I plead guilty." The court asked if Bradley understood that, because it was a non-negotiated plea, the court was "free to sentence [him] to anything from the minimum to the maximum sentence authorized by law[.]" Bradley answered, "yes, sir," and he did not indicate any uncertainty about the sentencing ranges. Before pronouncing sentence, the court explained at length the principles the court applied in formulating a sentence and commented on how Bradley's decision to participate in the armed robbery had cost Jackson and his family, as well as Bradley and his own family, so much. The court stated:

> You entered a plea, so I do have some discretion to sentence you, as opposed to have a jury announce a verdict adverse to you and there would be no discretion at that point in time because the State filed a notice of their intent to seek life without the possibility of parole. So . . . by your pleading guilty, [a life sentence is] one of the options that the Court has at this point in . . . time. . . . I'll tell you like I told [the co-defendant whom] I just sentenced a couple hours ago: The only reason that I am sentencing you to life in prison and not life without the possibility of parole is because you entered a plea.

The court then pronounced sentence as to each count seriatim, including life in prison with the possibility of parole for murder. The court explained to Bradley that the sentences for all counts were to run concurrently, "so that means you're going to have a life sentence with the possibility of parole." The court asked whether Bradley had any questions about the sentence, and Bradley responded, "no, sir."

At the hearing on Bradley's motion to withdraw his guilty plea, he testified that, just before the guilty plea hearing, his defense counsel told him that, with the plea, he "was taking a 20-year sentence and . . . might even do 15." He testified that he decided to plead guilty to avoid getting a life sentence. If he had known he was pleading to a charge with a mandatory life sentence, he would have gone to trial instead of pleading guilty. He testified that, when the court announced the sentence for each count, including "life with the possibility of parole" for the murder counts, he asked no questions, even though he was expecting a 20-year sentence, because he was

only 17 years old,[4] had no experience with the criminal justice system, and was traumatized by being sentenced even to 20 years and because his lawyer told him to just agree with what the court said. Neither of Bradley's plea-hearing lawyers testified at the hearing on his motion to withdraw his guilty plea. The trial court determined that the record as a whole established that Bradley understood the nature of the charges against him, the rights he was waiving by pleading guilty, and the possible consequences of his plea and denied the motion to withdraw the plea.

Although Bradley testified at the hearing on his motion to withdraw his guilty plea that his counsel told him that he was taking a 20-year sentence and might serve just 15 years and that he would not have entered a guilty plea to murder if he knew he would receive at least a life sentence, Bradley's credibility was for the trial court to determine.[5] In light of the record, as recounted above, the

---

[4] The record shows that Bradley was 17 years old at the time of the murder, and 18 years old at the guilty plea hearing.

[5] *McGuyton v. State*, 298 Ga. 351, 355 (1) (b) (782 SE2d 21) (2016) (in ruling on a motion to withdraw a guilty plea, credibility determinations are

court was entitled to disbelieve Bradley's self-serving testimony. See *Voils v. State*, 266 Ga. App. 738, 742 (2) (598 SE2d 33) (2004) (to the extent that the defendant's testimony at the hearing on his motion to withdraw his guilty plea contradicted his testimony at the plea hearing, credibility issues arose, which only the trial court could resolve). Although the phrase used in USCR 33.8 (D) (4) ("the mandatory minimum sentence") was not used during the plea hearing, Bradley was present and participating in the hearing when his attorney asked that the court give him "the most lenient sentence that the Court can give," which, as counsel specified, was "a life sentence" with the sentences for the other charges to run concurrently. See *Phelps*, 293 Ga. at 877-878 (2) (a) ("no specific 'magic words' are required to be used during a guilty plea proceeding to inform a defendant about his rights" (citation omitted)). The court gave Bradley multiple opportunities to ask any question he had about the sentencing options, including when the court expressly

---

within the purview of the trial court, and the court's factual findings will not be disturbed unless clearly erroneous).

referred to its discretion to sentence him "to anything from the minimum to the maximum sentence authorized by law," and Bradley consistently denied having any questions.

Again, the essential question is not technical compliance, or noncompliance, with Uniform Superior Court Rule 33.8 (D) (4) — the question is whether the record as a whole shows that Bradley's plea was in fact entered with sufficient awareness of the likely consequences of pleading guilty. See *Lewis*, 293 Ga. at 547-548 (1); *Phelps*, 293 Ga. at 878 n.5. We conclude that the trial court's determination based on the record as a whole that Bradley entered his plea with a sufficient awareness of the likely consequences was not clearly erroneous. *Johnson*, 303 Ga. at 706-707 (2). Consequently, the trial court did not abuse its discretion in denying Bradley's motion to withdraw his guilty pleas. Id.[6]

---

[6] The case relied upon by Bradley, *Gay v. State*, 342 Ga. App. 242 (803 SE2d 113) (2017), is distinguishable, because, at the guilty plea hearing in that case, the trial court affirmatively misstated the sentencing range, indicating that the armed robbery charge carried a penalty range of 10 to 20 years in prison, which led defense counsel to speculate with his client that the trial court may have been indicating that it was not inclined to impose life

3. The offense of aggravated assault of Jackson by shooting him (Count 10) merged for sentencing purposes with the conviction for the murder of Jackson by shooting him (Count 2). *Culpepper v. State*, 289 Ga. 736, 739 (2) (a) (715 SE2d 155) (2011); *Eckman v. State*, 274 Ga. 63, 66 (1) (548 SE2d 310) (2001). Accordingly, the sentence imposed for Count 10 must be vacated. *Culpepper*, 289 Ga. at 739 (2) (a); *Eckman*, 274 Ga. at 66 (1).

<u>Judgment affirmed in part and vacated in part. All the Justices concur.</u>

Decided May 20, 2019.

Murder. Fulton Superior Court. Before Judge Glanville.

---

imprisonment, which is authorized for armed robbery. Id. at 244-245. See OCGA § 16-8-41 (b) ("A person convicted of the offense of armed robbery shall be punished by death or imprisonment for life or by imprisonment for not less than ten nor more than 20 years."); *Garmon v. Johnson*, 243 Ga. 855, 856 (257 SE2d 276) (1979) (noting that the death penalty can no longer be imposed for armed robbery). In this case, by contrast, the prosecutor, on the court's behalf, correctly stated the maximum sentence, and neither the prosecutor nor the court misrepresented the minimum sentence for murder or suggested that a sentence of 20 years in prison was possible.

Kenneth W. Sheppard, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Burke O. Doherty, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.