308 Ga. 743
FINAL COPY

S20A0118.  MAHAFFEY v. THE STATE.

NAHMIAS, Presiding Justice.

In September 2014, Appellant Charles Mahaffey entered negotiated guilty pleas to felony murder and aggravated assault in connection with the stabbing death of Christopher Reynolds. Appellant now challenges the trial court's order denying his timely motion to withdraw his pleas, contending that he did not knowingly, intelligently, and voluntarily plead guilty. We affirm.

1. The record shows that on February 21, 2014, a Cobb County grand jury indicted Appellant for malice murder, felony murder, aggravated assault, and possession of a knife during the commission of a felony. His trial began on September 29, 2014. The next day, after jury selection concluded, the prosecutor informed the trial court that the parties had reached a negotiated plea agreement. The court then held a plea hearing, and the prosecutor explained that in exchange for Appellant's guilty pleas to felony murder and

aggravated assault, the State would recommend a sentence of life with the possibility of parole, nolle pros the remaining charges, and dismiss an unrelated pending felony theft and drug case against Appellant. The State also agreed not to oppose Appellant's parole when he becomes eligible.

At the plea hearing, the prosecutor proffered that the evidence, if there were a trial, would show the following. On November 25, 2013, Appellant was hanging out at a house with his girlfriend Jennifer Brook, her sister Beth, and Beth's boyfriend Reynolds. The group got into an argument, and Brook, Beth, and Reynolds decided to leave. As they got into Reynolds's truck, Appellant rode his bicycle down the street, where he yelled at Reynolds and said that he was going to kill Reynolds. Appellant then rode back toward the house, got off his bicycle, and used a long hunting knife to stab Reynolds, who was unarmed, in his abdomen and throat. Reynolds died moments later from his wounds.

As police officers arrived at the scene, Appellant, who had minor cuts on his hands, put the bloody knife in a nearby shed where

he was staying; testing later showed that the knife had Appellant's and Reynolds's blood on it. Appellant and Brook then agreed that they would tell the responding officers that they had seen an unknown man with dreadlocks stab Reynolds. Appellant and Brook initially told the officers that story, but Beth said that Appellant stabbed Reynolds, and other witnesses at the scene also identified Appellant as the assailant. Appellant was arrested, and he and Brook were separately interviewed. Brook eventually admitted that Appellant stabbed Reynolds. Appellant then changed his story, admitting that he stabbed Reynolds but claiming that he acted in self-defense.

Before the plea hearing, Appellant signed a copy of his indictment, acknowledging that he was changing his plea from not guilty to guilty of the felony murder and aggravated assault counts. Appellant and his plea counsel also signed a 26-question waiver-of-rights form. One question asked, "Do you understand that you have the right to remain silent?" Appellant wrote, "Yes." Appellant also acknowledged on the form that he understood that if he pled "Not

Guilty," he had the right to a jury trial; "the right to use the power and process of the Court to compel the production of any evidence, including the attendance of any witnesses in [his] favor"; and the right "not [to] have to testify against [him]self." He also acknowledged on the form that he understood that he was "giving up all of those rights" by entering his guilty pleas.

During his colloquy with the trial court, Appellant said that he was 26 years old, had completed the tenth grade, was not under the influence of drugs or alcohol, and understood the charges against him. He acknowledged that he had the right to remain silent, that the maximum sentence he would receive after pleading guilty would be life imprisonment, that he could plead guilty or not guilty, that no one made any promises or threats to influence him to plead guilty, and that his guilty plea could be used against him in determining his sentence if he is ever convicted of another crime. Appellant said that he was satisfied with his plea counsel and that they had discussed the case.

Appellant confirmed that he understood that if he pled not

guilty, he had the right to a jury trial; the right to confront witnesses against him; the right "to compel the production of any evidence, including the attendance of any witness in [his] favor"; and the right to an attorney. The court then asked, "You would not have to testify against yourself, do you understand that?"; Appellant responded, "Yes, sir." The court told Appellant that if he pled not guilty, he would be presumed innocent and the State would have the burden of proving his guilt beyond a reasonable doubt. The trial court then asked if Appellant understood that he "would be giving up all those rights" by pleading guilty, and Appellant answered, "Yes, sir." Appellant's plea counsel confirmed that Appellant had been informed of his rights and that counsel believed that Appellant understood the consequences of his guilty pleas.

The trial court accepted the guilty pleas, finding that they were "freely and voluntarily made and intelligently entered." In accordance with the State's recommendation, the court sentenced Appellant to serve life in prison with the possibility of parole for murder; the aggravated assault count merged.

On October 30, 2014, which was in the same term of the trial court, Appellant, through newly appointed counsel, filed a timely motion to withdraw his guilty pleas. The record shows no activity for more than three years, until the motion was amended in January 2018. At an October 1, 2018 hearing on the motion, Appellant testified that his plea counsel advised him that it would be in his best interest not to testify at trial and that he pled guilty because he was "concern[ed]" that he "wouldn't be able to testify on [his] own behalf." He also claimed that he was never informed that after sentencing, he could not withdraw his guilty pleas as a matter of right, and that he pled guilty because he believed that he had a right to withdraw his pleas later. In addition, Appellant testified that he was "under the impression" that if he went to trial, he could be sentenced for charges that were not included in the indictment. The State declined to cross-examine Appellant, and no other witnesses were called to testify. To rebut Appellant's claims, the State submitted his acknowledgment of his guilty pleas on the copy of his indictment, the signed guilty plea form, the plea hearing transcript,

and the final disposition form.

At the conclusion of the hearing, the trial court summarily ruled that the motion to withdraw the guilty pleas would be denied; on June 27, 2019, the court entered an order summarily denying the motion. Appellant then filed this appeal.

2. Before sentence is pronounced, a defendant has an absolute right to withdraw his guilty plea. See OCGA § 17-7-93 (b). After sentencing, however,

> "a defendant may withdraw his guilty plea only to correct a manifest injustice, which exists if the plea was in fact entered involuntarily or without an understanding of the nature of the charges. See . . . Uniform Superior Court Rule [('USCR')] 33.12 (B). When a defendant challenges the validity of his guilty plea in this way, the State bears the burden of showing that the defendant entered his plea knowingly, intelligently, and voluntarily. The State may meet its burden by showing on the record of the guilty plea hearing that the defendant understood the rights being waived and possible consequences of the plea or by pointing to extrinsic evidence affirmatively showing that the plea was voluntary and knowing. In evaluating whether a defendant's plea was valid, the trial court should consider all of the relevant circumstances surrounding the plea. The court's decision on a motion to withdraw a guilty plea will not be disturbed absent an obvious abuse of discretion.

*Bradley v. State*, 305 Ga. 857, 858-859 (828 SE2d 322) (2019)

(citation and footnote omitted).

Appellant argues that his guilty pleas were not knowingly, intelligently, and voluntarily entered because he was not advised that he had the right to testify at trial; because he was not informed that after sentencing, he could not withdraw his pleas as a matter of right; and because he believed that he would be sentenced on unindicted charges unless he pled guilty.[1] These arguments are meritless.

(a) We first address Appellant's claim that he was not advised of his right to testify at trial. USCR 33.8 (B) (5) says that a trial court should not accept a defendant's guilty plea without informing him on the record that by entering his plea, he waives, among other rights, "the right to testify and to offer other evidence." The provisions of USCR 33 "are mandatory in the trial courts," and "[i]f a defendant challenges the validity of his guilty plea on direct review, the State has the burden of showing substantial compliance

---

[1] Appellant does not raise any claims asserting that his plea counsel provided ineffective assistance.

with USCR 33, along with the constitutional requirements that underlie portions of that rule." *Smith v. State*, 287 Ga. 391, 399 (697 SE2d 177) (2010), overruled on other grounds by *Collier v. State*, 307 Ga. 363 (834 SE2d 769) (2019). But "even if the record does not adequately demonstrate compliance with one of USCR 33's provisions, the defendant must 'prove[ ] that withdrawal [of the guilty plea] is necessary to correct a manifest injustice,' as provided by USCR 33.12." *Smith*, 287 Ga. at 399-400 (citation omitted). See also *Bradley*, 305 Ga. at 859 ("'As to any complaint by [an appellant] about the trial court's failure to follow the letter of the applicable Uniform Superior Court Rules, the salient inquiry is . . . whether the record, as a whole, affirmatively shows that the plea in question was knowing and voluntary.'" (citation omitted)).[2]

---

[2] We note in contrast that this Court has required strict compliance with advising a defendant who pleads guilty of the three constitutional rights enumerated in *Boykin v. Alabama*, 395 U.S. 238 (89 SCt 1709, 23 LE2d 274) (1969) — the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. See id. at 243 & n.5. We have held that the failure to advise a pleading defendant of those three rights can never be deemed harmless error. See *Lejeune v. McLaughlin*, 299 Ga. 546, 546-547 (789 SE2d 191) (2016) (citing cases). Several members of this Court have questioned that line of precedent. See id. at 548  (Nahmias, J., dissenting,

In this case, the specific phrase "right to testify" was not used on the guilty plea form that Appellant signed or during his plea hearing. Nevertheless, the State has met its burden of showing substantial compliance with USCR 33.8 (B) (5)'s requirement that Appellant be informed of his right to testify at trial. See, e.g., *Bradley*, 305 Ga. at 862 (noting that "no specific 'magic words' are required to be used during a guilty plea proceeding to inform a defendant about his rights" (citation and punctuation omitted)).

Appellant acknowledged on the guilty plea form and again during his colloquy with the trial court that he understood that by pleading guilty, he was waiving the right to a jury trial and "to compel the production of any evidence, including the attendance of *any witness* in [his] favor." (Emphasis supplied.) "Logically included" in the right to compel the attendance of witnesses favorable to the defense is the defendant's right to testify himself, should he decide to do so. *Rock v. Arkansas*, 483 U.S. 44, 52 (107 SCt 2704, 97 LE2d

joined by Melton and Blackwell, JJ.). But we need not address that question in this case, because the right to testify at trial is not one of the three rights enumerated in *Boykin*.

37) (1987). Moreover, the guilty plea form and the transcript of the plea hearing show that Appellant acknowledged that by pleading guilty, he was giving up the right *not to* have to testify against himself, which is "a necessary corollary" to the right *to* testify. Id. Appellant's plea counsel also told the trial court that Appellant had been informed of his rights and that counsel believed that Appellant understood the consequences of his guilty pleas.

Appellant cites no case holding that the sort of advice he received is inadequate to inform a pleading defendant of his right to testify at trial, and we have found none. And although Appellant testified at the motion to withdraw hearing that he was "concern[ed]" that he "wouldn't be able to testify on [his] own behalf," the credibility of that self-serving testimony was for the trial court to determine, and the court implicitly rejected it. See *Bradley*, 305 Ga. at 862. See also *Davis v. State*, 306 Ga. 430, 432-433 (831 SE2d 804) (2019) (explaining that "in the absence of explicit factual and credibility findings by the trial court, we presume implicit findings were made supporting the trial court's decision"). Considering the

record as a whole, Appellant was adequately informed of his right to testify at trial. See, e.g., *Phelps v. State*, 293 Ga. 873, 876-878 (750 SE2d 340) (2013).

(b) Appellant also contends that his guilty pleas were invalid because he was never informed that he would not have an absolute right to withdraw his pleas after sentencing. But a defendant has no constitutional right to be advised by the trial court that he cannot withdraw his guilty plea as a matter of right after his sentence is pronounced. See *Brantley v. State*, 290 Ga. App. 764, 766 (660 SE2d 846) (2008) (explaining that the defendant had no constitutional right to be informed that after his sentence was pronounced, he no longer had an absolute right to withdraw his guilty plea). Cf. *Blackwell v. State*, 299 Ga. 122, 123 (786 SE2d 669) (2016) ("There is no Federal or State constitutional provision stating that a criminal defendant may withdraw his or her guilty plea as a matter of right at any time prior to sentence being pronounced."). Nor does USCR 33.8 require the trial court to advise a defendant that he cannot withdraw his guilty plea as a matter of right after

sentencing. USCR 33.10 says that "[i]f the trial court intends to *reject* the plea agreement" (emphasis supplied), then before pronouncing sentence on the defendant, the court must inform him on the record that, among other things, he may withdraw his guilty plea as a matter of right. Here, however, the trial court *accepted* the negotiated plea agreement, so USCR 33.10 did not apply.

(c) Finally, Appellant argues in passing that his guilty pleas were invalid because he was "under the impression" that he could be sentenced on unindicted charges if he went to trial instead of pleading guilty. But the only evidence to support that argument was Appellant's nebulous testimony at the motion to withdraw hearing, and as discussed above, the trial court was authorized to find that Appellant's testimony was not credible and implicitly did so. See *Davis*, 306 Ga. at 432-433; *Bradley*, 305 Ga. at 862. Moreover, the guilty plea form and the plea hearing transcript show that Appellant confirmed that no one made any promises or threats to influence him to plead guilty.

(d) In sum, the record as a whole supports the conclusion that

Appellant was advised of his pertinent constitutional rights, that he understood those rights and the consequences of waiving them, and that he then knowingly, intelligently, and voluntarily entered his guilty pleas. Accordingly, the trial court did not abuse its discretion by denying Appellant's motion to withdraw his pleas. See *Phelps*, 293 Ga. at 879.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 18, 2020.
Murder. Cobb Superior Court. Before Judge Leonard.
*Mitchell D. Durham*, for appellant.
*Joyette M. Holmes, District Attorney, John R. Edwards, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Assistant Attorney General*, for appellee.