**FIFTH DIVISION
MCFADDEN, P. J.,
GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 12, 2022**

# In the Court of Appeals of Georgia

A22A0701. COSBY v. THE STATE.

LAND, JUDGE.

Kenyatta Cosby appeals the denial of his motion to withdraw his non-negotiated guilty plea to charges of rape, kidnapping, aggravated battery and three counts of aggravated assault. He maintains that (1) the trial court erred by failing to hold a competency bench trial as required by OCGA § 17-7-130 (d); (2) the trial court erred by failing to inquire into his competency, sua sponte, before accepting his guilty plea; (3) his plea counsel rendered ineffective assistance of counsel for failing to request a competency trial; and (4) the trial court erred by failing to advise him of the mandatory minimum sentences for rape and kidnapping. For the following reasons, we affirm.

The record shows that in October 2016, a Fulton County grand jury indicted Cosby for rape, kidnapping, aggravated battery, sexual battery, and three counts of aggravated assault. Cosby filed a plea of mental incompetency to stand trial, and in August 2017, the trial court found him to be incompetent. Pursuant to OCGA § 17-7-130 (c), the court ordered the Department of Behavioral Health and Developmental Disabilities (DBHDD) to evaluate Cosby and determine whether he was competent to stand trial or whether he could attain competency in the future. The case was placed on judicial hold in the interim. In January 2018, Dr. Patricia O'Connell, a DBHDD psychologist, determined that Cosby was competent. The judicial hold was removed in April 2018.

Cosby's jury trial began in March 2020. The victim testified that in September 2016, she agreed to give Cosby a ride to his house. When she pulled into the driveway, Cosby took the car key out of the ignition, and when she tried to get it back, Cosby punched her several times in the face, choked her, and bit her shoulder and leg. At some point, Cosby pulled the victim from the car, slammed her head into the ground, and then dragged her by her feet into his backyard, where he raped her. A neighbor, who had called 911 during the incident, testified that he saw Cosby strike the victim and drag her from her car. The responding officer testified that when he

arrived at the scene, he found the victim on her hands and knees, bruised and crying for help, while Cosby was thrusting into her from behind. The officer's body camera captured the incident, and the video was admitted and played for the jury.

Once the State rested, Cosby inquired about entering a guilty plea. The trial court explained that it would accept a non-negotiated guilty plea at any time:

> You can enter a plea at any time that you want to. However, I would not say in advance of the plea what I would give you. All that we could do is make sure that you are aware of what the penalties are and what the range would be, but I would not pronounce my sentence until you decided to enter a guilty plea and I accepted your plea. And you would not be able to withdraw your plea or take it back if you didn't like the sentence.

The prosecutor then listed the penalties that Cosby was facing on each charge. At first, Cosby declined to enter a guilty plea: "I don't think I only want to do that. I [will] take it out to trial. . . . Suit up." But he changed his mind when the court denied his motion for a directed verdict, telling the judge, "I would like to apologize, ma'am, because I know my life is in your hands, ma'am. And . . . I know I may be asking you for a chance to change now, but I understand everything that I done did. . . . I surrender now, and I apologize."

During the plea colloquy, the trial court engaged Cosby in an extensive and thorough conversation, wherein he acknowledged that he understood the charges against him; he had reviewed the guilty-plea form with the assistance of counsel; he had discussed the facts and potential defenses with counsel; he was satisfied with counsel's representation; he understood that the court could impose any sentence authorized by law, regardless of the State's recommendation; he understood that he would have to register as a sex offender; he understood the rights he was waiving by entering into a guilty plea; and he understood the collateral consequences of pleading guilty.

The trial court inquired twice during the plea colloquy into Cosby's medications. Cosby denied being under the influence of any substances other than the medication he normally took for seizures and depression, and explained that his medication "sometimes" affected his ability to understand the proceedings, so he had not taken it that morning.

The trial court also inquired of plea counsel, who explained that Cosby had suffered a traumatic brain injury about three years before the incident that "affected him significantly," and that he had been diagnosed with schizophrenia, bipolar disorder, and depression. Plea counsel was nevertheless satisfied that Cosby was

4

competent, that he understood what was going on, and that the plea was voluntary. The trial court then took victim-impact testimony, after which Cosby apologized to the victim and the court, saying he "underst[oo]d all of [his] rights that [he] gave up to trial," and asking the court to "spare" him. The trial court accepted Cosby's guilty plea, explaining that it had no reason to doubt his competency, and sentenced him to 45 years in confinement, followed by life on probation.

Soon after sentencing, with the assistance of new counsel, Cosby moved to withdraw his guilty plea, asserting in part that his plea was not knowing and voluntary because he had not been competent to enter it and that plea counsel had rendered ineffective assistance by not requesting a competency hearing. In support, Cosby tendered Dr. O'Connell's January 2018 report finding him competent to stand trial, medical records showing that his prescription medications had been changed after he returned to the county jail, and records showing that he had previously been found incompetent on several occasions. He also presented testimony from plea counsel, Dr. O'Connell, and himself.

Plea counsel testified that he did not believe Cosby was incompetent or in need of a new evaluation at the time of the guilty plea, basing that opinion on his experience with other competency cases, his review of Cosby's records, and his

5

interactions with Cosby.[1] Dr. O'Connell testified that Cosby had been competent to stand trial when she evaluated him in January 2018, but that she had no basis for determining whether he was still so in March 2020 when he entered his plea, and that she was not qualified to say what effect on Cosby's competency a change in his medications would have had. On that evidence, the trial court denied Cosby's motion, finding that he had failed to show he was incompetent when he pleaded guilty. This appeal followed.

1. In his first enumeration of error, Cosby contends that the trial court erred by failing to conduct a competency hearing within 45 days of DBHDD's evaluation finding him competent to stand trial before accepting his guilty plea. We discern no reversible error.[2]

---

[1] We note that plea counsel testified that Cosby's competency was re-evaluated after Dr. O'Connell found him competent to stand trial. However, plea counsel was not questioned further on that point, and any results from that evaluation are not in the record.

[2] The State contends on appeal that this issue is waived because it was not raised in the trial court and was waived by Cosby's entry of a guilty plea. "Pretermitting whether [Cosby] preserved his competency argument, and in light of the fact that trial courts have an independent obligation to ensure the defendant is competent to stand trial if there is any cause for concern, we address this issue on the merits." *Riley v. State*, 356 Ga. App. 606, 610 (2), n. 6 (848 SE2d 474) (2020). See also *Crawford v. State*, 355 Ga. App. 401, 404 (844 SE2d 294) (2020) (although defendant waived a special jury trial on the issue of competency by failing to file a

6

If an accused files a motion requesting a competency evaluation, the trial court "may order the department to conduct an evaluation by a physician or licensed psychologist to determine the accused's mental competency to stand trial" and to make recommendations to restore the accused to competency if the accused is determined to be mentally incompetent to stand trial. OCGA § 17-7-130 (b) (1). Once a DBHDD licensed psychologist determines that the accused has received treatment that makes him "mentally competent to stand trial, the department shall notify the court," and the trial court "shall hold a bench trial to determine the accused's mental competency to stand trial within 45 days of receiving the department's evaluation[.]" OCGA § 17-7-130 (d) (1).

Cosby argues that the trial court failed to comply with the requirements of OCGA § 17-7-130 (d) (1) when it did not hold a competency hearing within 45 days of receiving the DBHDD's evaluation. "Because the statutory procedures of OCGA § 17-7-130 (d) were triggered by the trial court's entry of [an] order directing his evaluation[,] the court was bound to implement the remaining dictates of the statutory

special plea of incompetence, he did not waive his right to an "adequate hearing" on the issue). Cf. *Pate v. Robinson*, 383 U. S. 375, 384 (II) (86 SCt 836, 15 LE2d 815) (1966) (defendant whose competence is in doubt cannot be deemed to have waived his right to a competency hearing).

7

scheme." *Crawford v. State*, 355 Ga. App. 401 (844 SE2d 294) (2020). However, failure to comply with OCGA § 17-7-130 (d) (1) does not require a reversal. Rather, our precedent holds that when an appellant raises as error the trial court's failure to hold a mandatory hearing on competency, the trial court must conduct a post-conviction competency hearing. See *Beach v. State*, 351 Ga. App. 237, 242-243 (2) (b) (830 SE2d 565) (2019) (trial court erred by failing to conduct a hearing to determine defendant's mental competency to stand trial within 45 days of receiving the DBHDD evaluation, such error was not corrected by issuing an order nunc pro tunc after "briefly touch[ing]" on defendant's competency hearing during a *Faretta* hearing, and a remand was required for the trial court to conduct a post-conviction hearing on the issue of defendant's competency at the time of trial). See also *Crawford v. State*, 355 Ga. App. at 403-04 (remanding the case to conduct the competency hearing mandated by OCGA § 17-7-130 (d) (1) when trial court failed to make any determination about competency before or after trial and trial counsel testified that defendant could not communicate with him in complete sentences or otherwise).

Here, there is no dispute that the trial court failed to hold the statutorily required competency hearing after Dr. O'Connell found Cosby competent in January

8

2018 and before Cosby entered his guilty plea. But we reject Cosby's argument that "the record is devoid of any competency hearing in compliance with OCGA § 17-7-130." Cosby had the same interest and obligation to adduce evidence of his incompetence in support of his motion to withdraw his guilty plea as he would have at a competency trial. And on that evidence, the trial court expressly evaluated his competency at the time he entered his plea. Moreover, Cosby does not identify any evidence not already in the record that would require a new competency hearing. He has thus received the post-conviction review contemplated in *Beach*, and "remand would serve no useful purpose." *Banks v. State*, 275 Ga. App. 326, 329, n. 4 (620 SE2d 581) (2005) (citation and punctuation omitted). See also *Shell v. State*, 264 Ga. App. 547, 550 (2) (591 SE2d 450) (2003) ("[R]emand should be principled and necessary, not automatic, delaying, and wasteful of judicial and legal resources.") (citation and punctuation omitted). Accordingly, the trial court's failure to hold a timely competency trial has been remedied, and Cosby has failed to demonstrate reversible error on this ground.

2. Cosby contends that the trial court erred when it failed to sua sponte inquire into his competency. We disagree.

"A trial court has the sua sponte duty to inquire into a defendant's competency only when information becomes known to it, prior to or at the time of the trial, sufficient to raise a bona fide doubt regarding the defendant's competence." *Palmer v. State*, 303 Ga. 810, 813 (II) (814 SE2d 718) (2018) (citations and punctuation omitted). See also OCGA § 17-7-129 (a). "The salient question is whether the trial court received information which, objectively considered, should reasonably have raised a doubt about the defendant's competency and alerted the trial court to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense." *Traylor v. State*, 280 Ga. 400, 404 (4) (a) (627 SE2d 594) (2006). In consideration of this issue, this Court must focus on three factors: (1) any evidence of the defendant's irrational behavior; (2) the defendant's demeanor at trial; (3) and any prior medical opinion regarding the defendant's competence to stand trial. *Palmer,* 303 Ga. at 813 (II). This analysis focuses on "what the trial court did in light of what it knew at the time of the trial or plea hearing." *Riley v. State*, 356 Ga. App. 606, 612 (2) (848 SE2d 474) (2020) (citation and punctuation omitted).

The record shows that following the plea colloquy, Cosby's counsel agreed that Cosby was competent, that he understood what was going on, and that the plea was

voluntary. Before pronouncing sentence, the trial court explained that it had determined Cosby to be competent:

> I will further note for the record that during the prosecution in this case . . . Cosby had initially been found not competent to stand trial; had been delivered to the custody of the Georgia Department of Behavioral Health and Developmental Disabilities and spent some time there; but was ultimately restored through their competency restoration program and was discharged back into the charge of the court on March 29, 2018, with competency restoration having been completed. And in my experience in engaging with Mr. Cosby since I have been assigned to the case, . . . I don't have any reason to believe that he is not still competent and was competent to stand for this trial.

Further, in denying the motion to withdraw, the trial court recalled that "throughout voir dire and the presentation of the State's case-in-chief, Cosby was attentive and calm." It noted that Cosby had inquired about a plea after the State had presented "overwhelming evidence of his guilt," which demonstrated to the trial court Cosby's "clear understanding of how the evidence had unfolded and the risk of conviction." In light of Cosby's conduct and Dr. O'Connell's report finding Cosby competent—and in the absence of any evidence to the contrary—the trial court found no reason to believe that Cosby was incompetent when he entered his guilty plea. Under these circumstances, Cosby has failed to show that he exhibited any irrational

11

behavior or unusual demeanor, or that there existed any medical opinion that would have triggered a sua sponte inquiry into his competency. See *Mullinax v. State*, 211 Ga. App. 831, 833 (1) (440 SE2d 720) (1994). See also *Traylor*, 280 Ga. at 405 (4) (a); *Allen v. State*, 333 Ga. App. 853, 855-856 (2) (777 SE2d 699) (2015).

Nevertheless, Cosby asserts that during his plea, he spoke in "irrational" terms, such as "suit up," "I surrender," and "spare me." But he fails entirely to explain why those phrases would have reasonably raised a doubt about his competency since they were appropriately used in context.[3] Cosby also claims that his demeanor showed that he was incompetent, pointing to a lack of cooperation with plea counsel that required deputies to tell him to "calm down," and an incident where he was accused of sodomizing another jail inmate while awaiting trial. But a defendant's hostility toward counsel does not necessarily oblige the court to inquire into competency. See *Flesche v. State*, 254 Ga. App. 3, 5 (1) (561 SE2d 160) (2002) ("obstinate" or "uncooperative" behavior does not show incompetency); *Loggins v. State*, 225 Ga.

---

[3] The trial court determined that "suit up" was a "colloquial phrase" that Cosby used to indicate that he wanted to finish the trial. Likewise, Cosby told the court that he wanted to "surrender" right after he decided to enter a guilty plea, and he asked the court to "please spare [him]" just before his sentence was pronounced. Indeed, Cosby testified at the motion to withdraw hearing that when he asked the judge to "spare" him, he was looking for "just any leniency."

12

App. 713, 716 (5) (484 SE2d 758) (1997) (hostility toward attorney does not necessarily indicate incompetency). And we fail to see why the sodomy incident would have called Cosby's competency into question because Cosby denied at the plea hearing that the act ever occurred and an investigation by authorities at the jail did not confirm the accusation.

Finally, as to the third inquiry, Cosby asserts that the trial court's awareness that he had been found incompetent multiple times, as well as his admission that he had not taken his medication the day he entered his guilty plea, necessitated an inquiry into his competency. We disagree. Although Cosby had been found incompetent on several previous occasions, Dr. O'Connell's report finding him competent raised a presumption of competency. See *Page v. State*, 313 Ga. App. 691, 693 (1) (722 SE2d 408) (2012). And while Cosby argues that the trial court should have been concerned that he did not take his medication because Dr. O'Connell's report concludes that "compliance with his medication regimen is essential" for him to remain competent, the trial court was entitled to rely on Cosby's own assertion that he did not take his medication because it sometimes affected his ability to understand the proceedings. See *McDowell v. State*, 282 Ga. App. 754, 756 (639 SE2d 644) (2006) (where the trial court inquired into the defendant's medications and the

13

defendant responded that they did not affect his ability to understand the plea proceedings, the court had no duty to further inquire into medication's effect on defendant's ability to competently enter a plea); *Henderson v. State*, 300 Ga. 526, 528 (2) (796 SE2d 681) (2017) (the trial court does not err in failing, sua sponte, to conduct a competency hearing where the defendant asserts that his medication regimen does not impair his judgment), overruled on other grounds by *Collier v. State*, 307 Ga. 363, 377 (834 SE2d 769) (2019). Accordingly, Cosby "has failed to show the type of behavior or demeanor at trial that would reasonably raise a bona fide question about his competence, and because the only medical opinion in evidence indicates that he was competent to stand trial, [his] competency argument fails." *Palmer*, 303 Ga. at 814 (II).

3. Cosby claims that plea counsel rendered ineffective assistance of counsel by failing to request a competency trial.[4]

---

[4] In one sentence, Cosby also asserts that plea counsel was ineffective for failing "to go over the plea colloquy" with him and failing to properly advise him of the direct consequences of his plea. However, because this issue was not raised in his enumerations of error, we do not address it here. See *Kirkland v. State*, 315 Ga. App. 143, 145 (1), n. 1 (726 SE2d 644) (2012) ("[A]n appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors.") (citation and punctuation omitted). Moreover, even if this error had been properly raised, Cosby would have abandoned it on appeal by failing to support it with legal argument and citation to relevant

"When a criminal defendant seeks to withdraw a guilty plea on the ground of ineffective assistance of counsel, the ineffective assistance claim must be evaluated under the two-prong test set forth in *Strickland v. Washington*,[5] deficient performance and prejudice." *Evelyn v. State*, 347 Ga. App. 368, 370-371 (819 SE2d 657) (2018) (citation and punctuation omitted). To prove deficient performance, one must show that his attorney's conduct, viewed from counsel's perspective "at the time of trial and under the particular circumstances of the case," was so "patently unreasonable that no competent attorney would have followed such a course." *Smith v. State*, 354 Ga. App. 882, 886 (2) (842 SE2d 305) (2020) (punctuation and footnote omitted). To prove the prejudice prong, one must show that but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *Brown v. State*, 302 Ga. 813, 814 (2) (809 SE2d 742) (2018). When reviewing a trial court's ruling on counsel's effectiveness, we accept the trial court's factual findings and credibility determinations unless clearly

---

binding authority. See Ct. App. R. 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.") See also *Atkinson v. State*, 243 Ga. App. 570, 575 (2) (531 SE2d 743) (2000) (deeming an argument abandoned where the appellant cited to the general legal standard and presented a single conclusory sentence).

[5] 466 U. S. 668 (104 SCt 2052, 80 LEd.2d 674) (1984).

15

erroneous, but we independently apply the legal principles to the facts. *Smith,* 354 Ga. App. at 886 (2). Cosby has proved neither prong.

Regarding deficient performance, Cosby contends that plea counsel should have requested a competency trial because he testified at the motion to withdraw hearing that he was concerned about Cosby's mental health, and though he did not think about it at the time of the guilty plea, "looking at it now," this "probably" would have been a good case for a competency trial. But "a lawyer second-guessing his own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim." *Crouch v. State*, 305 Ga. 391, 400 (3) (825 SE2d 199) (2019) (citation and punctuation omitted). Moreover, the trial court credited plea counsel's affirmation at the plea hearing that he believed Cosby was competent to enter the guilty plea, and plea counsel testified at the motion to withdraw hearing that he believed Cosby was competent to enter a guilty plea because he understood the proceedings and could follow what was happening. Given that evidence, Cosby has failed to show that plea counsel's decision not to request a competency trial was objectively unreasonable. See *Page v. State*, 313 Ga. App. 691, 694 (2) (722 SE2d 408) (2012) (counsel's reliance on State psychiatrist's evaluation was not deficient performance where counsel had no doubts as to defendant's competency).

Cosby has also failed to demonstrate prejudice. Dr. O'Connell's evaluation and testimony, plea counsel's testimony, and the trial court's observations support the court's determination that Cosby was competent when he entered his guilty plea. Moreover, Cosby failed to produce any medical records, expert testimony, or other evidence to the contrary. Thus, Cosby cannot show a reasonable probability that but for plea counsel's failure to request a competency trial, the outcome of the proceeding would have been different. See *Brown*, 302 Ga. at 814 (2). See also *Smith*, 354 Ga. App. at 887 (2) (counsel's failure to request additional psychiatric examination did not constitute ineffective assistance of counsel in the absence of any evidence that defendant was incompetent).

4. Finally, Cosby asserts that the trial court erred when it failed to advise him that entering a non-negotiated plea would subject him to minimum mandatory sentences of 25 years for rape and ten years for kidnapping. Again, we find no error.

Before a trial court may accept a defendant's guilty plea, Uniform Superior Court Rule 33.8 (D) (4) requires the court to inform the defendant on the record of the "mandatory minimum sentence, if any, on the charge." "The provisions of USCR 33 are mandatory in the trial courts, and if a defendant challenges the validity of his guilty plea on direct review, the State has the burden of showing substantial

17

compliance with USCR 33, along with the constitutional requirements that underlie portions of that rule." *Mahaffey v. State*, 308 Ga. 743, 746 (2) (a) (843 SE2d 571) (2020) (citation and punctuation omitted). "But even if the record does not adequately demonstrate compliance with one of USCR 33's provisions, the defendant must prove that withdrawal of the guilty plea is necessary to correct a manifest injustice[.]" Id. (citation and punctuation omitted).

The record shows that after the State rested its case and Cosby inquired about whether he could enter a plea, the trial court informed him that it would make sure that he was aware of the penalties and sentencing ranges, but that the court would not pronounce its sentence until Cosby entered a guilty plea. The prosecutor then listed the penalties that he was facing on each charge:

> For the count of rape, it's 25 to life. For kidnapping, it's one to 20 years. For aggravated battery, one to 20 years. For aggravated assault, each count, one to 20 years. And for sexual battery, which is a misdemeanor, one day to 12 months.

Cosby acknowledged the penalties but chose to go forward with trial at that point. Later, when he changed his mind and decided to enter a plea, the trial court corrected the State's sentencing range on the record immediately before calling Cosby to the

18

podium to conduct the plea colloquy, noting that the range for "kidnapping is ten to 20, not one to 20."

It may "have been the better practice for the prosecutor to have used the word 'mandatory' in describing the minimum sentence[s]." *Rodriguez v. State*, 280 Ga. App. 423, 424 (634 SE2d 182) (2006). Still, the record shows that Cosby was told the sentencing ranges for rape and kidnapping before he entered his guilty plea, and was therefore adequately informed of the mandatory minimum sentences on each count, as required by USCR 33.8. Accordingly, Cosby has shown no manifest injustice mandating the withdrawal of his guilty plea. See id.

*Judgment affirmed. McFadden, P. J., and Gobeil, J.,* concur.