**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: January 5, 2026

S25A1289.  MURRAY v. THE STATE.

COLVIN, Justice.

Appellant Cornelius Murray, who pled guilty to the malice murder of Willie Jacox pursuant to a negotiated plea agreement, appeals the trial court's denial of his motion to withdraw his guilty plea.[1] On appeal, Murray argues that the trial court abused its

---

[1] The crime occurred on July 24, 2021. On September 14, 2021, a Houston County grand jury indicted Murray and Natajah Culpepper for malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), and possession of a firearm during commission of a felony (Counts 4, 5, and 6). In August 2022, plea counsel entered an appearance of counsel for Murray. Murray entered a guilty plea pursuant to a negotiated plea agreement on February 9, 2023. On February 15, 2023, the court entered a final disposition, sentencing Murray to life with the possibility of parole for Count 1, merging Count 3 with Count 1 for sentencing purposes, and nol prossing Counts 4 through 6. Although the court purported to merge the felony-murder count (Count 2) with the malice-murder count (Count 1), the felony-murder count was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371–72 (1993).

Murray timely filed a motion to withdraw his guilty plea on March 8, 2023, and amended the motion on April 3, 2023. Thereafter, appellate counsel was appointed to represent Murray in connection with his motion. Following a

discretion in denying his motion to withdraw his guilty plea because his plea was not knowing and voluntary, and because his plea counsel performed deficiently. As explained below, however, we discern no abuse of discretion. Accordingly, we affirm the trial court's denial of Murray's motion to withdraw his guilty plea.

1. At the guilty plea hearing, the prosecutor provided the following factual basis for Murray's negotiated guilty plea. Based on interviews with Murray and his co-defendant, Natajah Culpepper, officers determined that, at the time of the shooting in July 2021, Murray and Culpepper were dating and "down on their luck." The co-defendants knew Jacox, and although Culpepper considered Jacox a friend, Murray felt disrespected by Jacox and did not like Jacox talking to his girlfriend. Shortly before the shooting, Culpepper called Jacox and asked him to meet them. When Jacox

hearing on the motion on January 10, 2025, the trial court entered an order denying Murray's motion to withdraw his guilty plea on May 19, 2025. After having filed a premature notice of appeal directed to this Court, Murray filed an amended notice of appeal directed to the Court of Appeals. The Court of Appeals transferred the appeal to this Court. The case was docketed to this Court's August 2025 term and submitted for a decision on the briefs.

2

arrived, Culpepper approached the window of Jacox's vehicle and talked to him while Murray, who had been "hiding out away from the car," "c[ame] around" and "pretty much unload[ed] the whole clip," shooting and killing Jacox.

According to the prosecutor's factual proffer, witnesses present in the area heard multiple gunshots, saw a male rummaging through Jacox's vehicle, and observed a male and female, later identified through a "show-up" as Murray and Culpepper, running from the scene. Officers responding to the scene found Jacox dead in his vehicle with multiple gunshot wounds. Soon thereafter, officers who were looking for suspects coming from the scene located and stopped Murray and Culpepper. At the time, Culpepper was wearing a backpack that contained a gun, which smelled like it had recently been used. A bullet recovered from the gun matched shell casings found at the scene of the shooting. Officers performed a gunshot residue test on Murray, which tested positive, and Murray admitted during his police interview that he fired the shots that killed Jacox.

The prosecutor informed the court that, pursuant to the

negotiated plea, the State's recommendation was that the court sentence Murray to life in prison with the possibility of parole for Count 1 (malice murder), merge Counts 2 and 3, and nol pros Counts 4 through 6. The court then questioned Murray about a guilty plea form he had signed. Markings on the form indicated that Murray understood each of his constitutional rights (including his rights to a jury trial, to cross-examine witnesses called against him, and to remain silent at trial), and that he would be giving up his constitutional rights by pleading guilty. The form further indicated that Murray understood that, upon a guilty plea, he could receive a "life" sentence of imprisonment. In addition, the form indicated that Murray was pleading guilty because he was in fact guilty, that he was entering a guilty plea freely and voluntarily, and that no one had threatened or forced him to enter a guilty plea. Plea counsel had also signed the form, certifying that she reviewed the guilty plea form with Murray, that he understood its contents, and that he had freely and voluntarily signed the form.

When asked at the guilty plea hearing, Murray stated that he

remembered his attorney explaining all of his constitutional rights listed on the guilty plea form. The court noted that, as to each right listed on the form, Murray had circled the portion of the form indicating that he understood the right, and that he wanted to waive the right. The court then asked Murray if he was waiving his constitutional rights freely and voluntarily, and Murray responded, "Yes, sir." In response to the court's questioning, Murray indicated that he was under the care of a psychiatrist and had taken medication that morning. When asked if the medication would cause him "not to understand what [he was] doing today or the consequences of entering a plea," Murray responded, "I mean I don't really know. When I do take the medicine I be okay, but I don't know." The court then asked Murray if he understood he was entering a plea to malice murder, and Murray said, "Yes."

Turning to plea counsel, the court asked if she was satisfied that Murray understood what was happening and the consequences of entering a guilty plea, and plea counsel responded:

I am.... [W]e spent over an hour this morning making

sure that he understood what we were talking about. I even brought [my boss, another attorney,] down to [t]he jail with me so that she could also speak with him to get a sense and make sure that he understood what we were talking about …, so I do feel that he does.

Plea counsel further said that, after having "spent about an hour going over this form with him this morning," she believed "he understands it and it is voluntary."

The court found that Murray had made a free and voluntary waiver of his constitutional rights and then asked Murray if he was entering a plea of guilty to the murder charge because he was in fact guilty. Murray responded, "Yes." The court then accepted Murray's plea and informed him about his rights to appeal or file a motion to withdraw the plea.

After hearing from Jacox's children, Murray addressed the court, saying, "I just want to apologize to y'all. I'm sorry. I wish I never did it. I'm sorry. I'm sorry." The court then announced that, in accordance with the sentencing recommendation negotiated by the parties, it would impose a sentence of life in prison with the possibility of parole for malice murder, and it would merge or nol

6

pros the remaining counts. The court also noted that the parole board would be able to consider parole after 30 years.

Murray timely filed a motion to withdraw his guilty plea. In an amended motion, Murray claimed that his plea was not entered knowingly and voluntarily because it was based on a "mistaken belief as to certain facts and evidence," and that he had received ineffective assistance of counsel.

At a hearing on Murray's motion to withdraw his guilty plea, plea counsel and Murray each testified. Plea counsel testified that she was appointed to represent Murray, that Murray's case was her first murder case as lead counsel, and that her boss (a more experienced attorney) assisted her in reviewing the case and meeting with Murray. She testified that she had reviewed all the discovery, spoken to the witnesses listed in the discovery materials, and visited the scenes listed in the police reports. She further said that, on "numerous occasions" prior to Murray entering his guilty plea, she had visited Murray, reviewed all the paper discovery with him, and watched all the videos with him, including the video

recordings of Murray's and Culpepper's police interviews. She further stated that she had explained to Murray the implications of what he had told the police.

Plea counsel testified that she had met with Murray to discuss the plea deal and to review the guilty plea form. She said that she had explained to Murray that a sentence of life with the possibility of parole meant that he would serve a mandatory minimum of 30 years in prison, after which he may or may not get out of prison based on a parole decision. She further testified that she had asked him each question on the guilty plea form and circled the appropriate answer before sending the form back to him to sign. According to plea counsel, Murray "understood the questions," had no "problem[ ] answering the questions," appeared to be "coherent," and did not "tell [her] he did not understand what he was doing until after the plea was entered." Plea counsel recounted that, as she was leaving the courthouse after Murray entered his plea, she was called back upstairs to meet with him, at which point Murray said he wanted to withdraw his guilty plea because "he thought that he

8

would get out in 30 years, that it wasn't a parole issue in 30 years, that he was just going to get out in 30 years."

Murray testified that plea counsel was "not telling the truth" — that she had only visited him two or three times, that she never provided him any documents or discovery, and that "she never showed [him] no videos." According to Murray, he "kept asking her" if the plea deal was for a "life sentence or 30 years," and "[s]he never said [a] life sentence" but instead "kept saying 30 years," "30 with parole." Murray testified that he told plea counsel "[m]ultiple times" before pleading guilty, "I didn't want to take the plea," and "I want to go to trial." But according to Murray, she told him to just "take this plea and appeal it."

On cross-examination, Murray denied understanding what he was doing when he entered his guilty plea, said that he had not taken his medication that day, and represented that he only told the court he understood what he was doing because plea counsel "told [him] to say yes to everything the [j]udge said." When asked if he had lied to the court about taking his medication, Murray

responded, "Yeah, 'cause she told me to tell the [c]ourt yes." And when asked to confirm if it was his testimony "that [his] lawyer at the time told [him] to lie to the [c]ourt about taking [his] medicine that day," Murray responded, "Yes, sir, it's what she had told me, yes. Those were her exact words."

At the conclusion of the hearing, the trial court orally denied Murray's motion to withdraw his guilty plea, finding that plea counsel's testimony was "more credible" than Murray's. As to Murray's claim that he did not enter a knowing and voluntary plea, the court found that "the great weight of the evidence [showed that Murray] understood the consequences of entering his plea, that he voluntarily waived his rights, [and] that he understood exactly what was going on as far as the charge against him." In reaching this conclusion, the court noted that, at the guilty plea hearing, the prosecutor stated that the negotiated plea was for a sentence of life with the possibility of parole, not life in prison to serve 30 years; and Murray said that his attorney had explained his rights, that he understood them, and that he was waiving his rights freely and

voluntarily. The court further noted that Murray "clearly" understood what his sentence would be because he indicated on his guilty plea form that he understood the maximum penalty was life imprisonment. As to the ineffective-assistance-of-counsel claim, the court found that Murray's testimony about plea counsel misleading him "appear[ed] very strongly to be an after the fact concoction," and that counsel was not deficient because she had visited Murray numerous times and shared all the discovery with him. The trial court later entered a written order denying Murray's motion to withdraw his guilty plea, summarily stating that Murray had not established a manifest injustice warranting withdrawal of the guilty plea.

2. Murray argues on appeal that the trial court abused its discretion in denying his motion to withdraw his guilty plea because he did not plead guilty knowingly and voluntarily. This claim fails.

"After sentencing, a defendant may withdraw his guilty plea only to correct a manifest injustice[.]" *Espinosa v. State*, 320 Ga. 98, 102 (2024) (quotation marks omitted). We have explained that

11

"withdrawal is necessary to correct a manifest injustice if, for instance, a defendant is denied effective assistance of counsel, or the guilty plea was entered involuntarily or without an understanding of the nature of the charges." *Moody v. State*, 316 Ga. 490, 497 (2023) (quotation marks omitted).

"[A] guilty plea is valid as a matter of federal constitutional law if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances." *Green v. State*, 318 Ga. 610, 636 (2024). To determine whether a guilty plea was voluntary and intelligent, "the trial court must consider whether the plea was the result of the defendant's own free choice, made with sufficient awareness of the relevant circumstances and likely consequences." *Harris v. State*, 319 Ga. 133, 137 (2024).

When we review a trial court's determination that a guilty plea was voluntary and intelligent, we review the court's factual findings for clear error and its ultimate determination de novo. See *Harris*, 319 Ga. at 137. And we review a trial court's denial of a motion to withdraw a guilty plea for abuse of discretion. See *Espinosa*, 320 Ga.

12

at 102. "A trial court does not abuse its discretion in denying a motion to withdraw a guilty plea if the record supports the trial court's determination that a plea was made knowingly, intelligently, voluntarily, and without coercion." *Powell v. State*, 309 Ga. 523, 524–25 (2020).

Here, as the trial court found, "the great weight of the evidence" described above showed that Murray entered a voluntary and intelligent guilty plea. As correctly described by the trial court, the transcript of the guilty plea hearing showed that the prosecutor explained that the recommendation upon entry of a guilty plea was that Murray would serve a sentence of life in prison with the possibility of parole; that Murray acknowledged reviewing with plea counsel all the constitutional rights he would be waiving by pleading guilty; that Murray confirmed he was freely and voluntarily waiving those rights; that Murray confirmed his understanding that he was pleading guilty to the malice murder charge because he was guilty; that Murray apologized for the killing; and that plea counsel was satisfied that Murray was entering a free and voluntary plea with

13

an understanding of what he was doing and the consequences. The trial court also correctly noted that the guilty plea form signed by Murray indicated that Murray understood he could receive a life sentence upon entering a guilty plea. And the trial court credited plea counsel's testimony that she had shared the discovery materials with Murray on "numerous occasions." In addition, the record shows that the prosecutor described the factual basis for the plea at length before Murray pled guilty, and that plea counsel testified at the hearing on the motion to withdraw the guilty plea that she had explained to Murray the implications of the discovery materials for the charges, as well as how a sentence of life in prison with the possibility of parole would operate. Thus, the record as a whole shows that Murray "entered his guilty plea voluntarily and with awareness of the relevant circumstances and likely consequences." *Green*, 318 Ga. at 639.

In his appellate brief, Murray appears to argue that his plea was not voluntary and intelligent for several reasons, but his arguments are unavailing. To the extent that Murray contends that

his plea was not voluntary and intelligent simply because the court failed to expressly advise him of his *"Boykin* rights,"[2] and because the trial court did not strictly follow the procedures for accepting a guilty plea outlined in Uniform Superior Court Rule 33.8,[3] these arguments fail. As we have explained, "the record [need] not expressly indicate that the defendant was informed that he was waiving each of the so-called '*Boykin* rights'" — "the right to a jury trial, the right to confront adverse witnesses, and the right to be protected from compelled self-incrimination" — in order to establish that the defendant entered a "voluntary and intelligent" plea. *Green*, 318 Ga. 611–12. And "failure to follow any particular part of [Uniform Superior Court Rule 33.8] … is not automatic grounds for reversal as long as the procedures the court followed show that the defendant's guilty plea was voluntary and intelligent under the

---

[2] *Boykin v. Alabama*, 395 US 238 (1969).

[3] Uniform Superior Court Rule 33.8 provides that "[t]he judge should not accept a plea of guilty or nolo contendere from a defendant without first" making certain determinations, including that "the defendant understands the nature of the charge(s)," and informing the defendant of various matters, including that he is waiving certain rights by entering a plea.

totality of the circumstances." Id. at 638. Although Murray asserts that the trial court failed to expressly advise him of his "*Boykin* rights" and to strictly follow Uniform Superior Court Rule 33.8, he does not explain how these asserted failures prevented him from voluntarily and intelligently entering his plea.

Murray also argues that his guilty plea was not made voluntarily and intelligently because Murray "was emphatic in his testimony [at the hearing on the motion to withdraw his guilty plea] that 'I kept telling [plea counsel] I didn't want to take the plea. I kept telling her I want to go to trial.'" But the trial court was not required to credit Murray's testimony. See *Powell*, 309 Ga. at 525 (noting that "the credibility of witnesses is for the trial court to determine"). And the trial court expressly determined that much of Murray's testimony "appear[ed] very strongly to be an after the fact concoction," and that his plea counsel (who testified that Murray appeared to understand what he was doing when he entered his guilty plea) had offered the "more credible" testimony. See *Mahaffey v. State*, 308 Ga. 743, 747 (2020) (noting that "the credibility of [the

defendant's] self-serving testimony was for the trial court to determine"); *Davis v. State*, 306 Ga. 430, 432 (2019) (noting that a "trial court [i]s authorized to credit the testimony of the defendant's counsel, and its factual findings and credibility determinations will be accepted unless clearly erroneous" (cleaned up)). These credibility determinations were not clearly erroneous, particularly because Murray himself represented to the court during the guilty plea hearing that he was freely and voluntarily waiving his constitutional rights and entering a guilty plea because he was in fact guilty.[4]

---

[4] Although Murray does not clearly raise on appeal the primary argument he raised below — that his guilty plea was not voluntary and intelligent because he did not understand that a guilty plea to malice murder could subject him to a life sentence — that claim also lacks merit. The trial court found that Murray "clearly … understood that this was [a sentence] with the possibility of parole" because, among other things, the guilty plea form indicated that Murray "underst[ood] that upon a plea or verdict of guilty the maximum imprisonment [he] could receive [was] life"; the prosecutor "in her opening [at the guilty plea hearing] indicated what the sentence would be, life with the possibility of parole, not life to serve 30 years"; and Murray's counsel told him "that the mandatory sentence was life in prison, [and] there was no guarantee of any parole." The record authorized these findings, as the guilty plea form that Murray signed expressly identified the maximum punishment as "life" in prison; the prosecutor at the beginning of the guilty plea hearing explained that, pursuant to the negotiated plea, the State was recommending a sentence of "life with the possibility of parole"; and plea counsel testified at

Accordingly, Murray has not shown that the trial court abused its discretion in denying his motion to withdraw his guilty plea on the basis that his plea was not entered voluntarily and intelligently. See, e.g., *Powell*, 309 Ga. at 526 (holding that trial court did not abuse its discretion in denying a motion to withdraw a guilty plea where "[t]he trial court explicitly credited plea counsel's testimony about her review of the plea form with [the defendant], discredited [the defendant's] testimony that he did not understand the plea proceedings, and found that [the defendant] knowingly and voluntarily entered his plea" (quotation marks omitted)); *Mahaffey*, 308 Ga. at 748 (rejecting a defendant's argument that, because he had a "[mis]impression" about what would happen "if he went to trial instead of pleading guilty," his plea was not knowing and voluntary, where the guilty plea form and plea hearing transcript conflicted with the defendant's testimony on that matter).

3. Murray also argues on appeal that the trial court abused its

---

the hearing on the motion to withdraw the plea that she had explained to Murray precisely what a life-with-the-possibility-of-parole sentence would mean for him.

18

discretion in denying his motion to withdraw his guilty plea because plea counsel rendered ineffective assistance of counsel. As noted above, "[w]e have explained that ineffectiveness of counsel can constitute manifest injustice requiring that a defendant be allowed to withdraw his plea." *Goodwin v. State*, 319 Ga. 842, 844 (2024) (cleaned up). "To prevail on a claim of ineffective assistance of counsel, [a defendant] must show that plea counsel's performance was constitutionally deficient and that he was prejudiced as a result." *Espinosa*, 320 Ga. at 102 (citing *Strickland v. Washington*, 466 US 668, 687 (1984)). If a defendant fails to carry his burden of proving either prong of the *Strickland* test, we need not examine the other prong. See id. "This Court accepts a [trial] court's factual findings and credibility determinations on an ineffectiveness claim unless they are clearly erroneous, but we apply legal principles to the facts de novo." *Hood v. State*, 315 Ga. 809, 813 (2023) (quotation marks omitted).

Here, Murray has not shown that plea counsel was deficient. Murray asserts on appeal that plea counsel failed to "interview

witnesses," "provide [Murray] with discovery," "adequately prepare [Murray] for trial," and "adequately advise [Murray] as to the nature and consequences of a plea of guilty." But plea counsel testified to the contrary at the hearing on the motion to withdraw the guilty plea, stating that she had interviewed the witnesses identified in the discovery materials, provided Murray with all the discovery materials, reviewed the discovery materials with Murray on numerous occasions, explained to Murray the implications of his admissions to police, reviewed the guilty plea form with Murray in detail, and explained to Murray in practical terms how a sentence of life in prison would operate. The trial court credited plea counsel's testimony, as it was entitled to do, and Murray has not explained what more plea counsel should have done. See *Hood*, 315 Ga. at 813 (holding that the trial court was entitled to credit plea counsel's testimony over the defendant's where plea counsel testified "that she provided [the defendant] with informed legal advice regarding the consequences of his decision to plead guilty" (quotation marks omitted)). Accordingly, Murray has not shown that the trial court

abused its discretion in denying his motion to withdraw his guilty plea based on ineffective assistance of counsel. See *Davis*, 306 Ga. at 432–33 (affirming the trial court's denial of a motion to withdraw a guilty plea based on ineffective assistance of counsel where plea counsel testified that he had reviewed discovery, met with the defendant "at least three times," and explained the negative implications of the State's evidence for the defense); *Bradley v. State*, 305 Ga. 857, 862 (2019) (concluding that the trial court "was entitled to disbelieve [the defendant's] self-serving testimony" that plea counsel "told him that he was taking a 20-year sentence and might serve just 15 years" for murder); *Graham v. State*, 300 Ga. 620, 622 (2017) (holding that the trial court did not abuse its discretion in denying a motion to withdraw a guilty plea because "the trial court was authorized to weigh the credibility of [the] appellant and her attorney" and conclude that the appellant's testimony that "she wanted to go to trial" and had pled guilty "only because she was coerced to do so by her attorney" was "not credible").

*Judgment affirmed. All the Justices concur.*